IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:02CV28-02-V
(5:99CR59-V)

HARRY RAMONE BAPTISTE          )
    Petitioner,          )
                    )
         v.          )          O R D E R
                    )
UNITED STATES OF AMERICA,          )
    Respondent.          )
_____)

     **THIS MATTER** is before this Court upon petitioner's "Motion
To Vacate, Set Aside, Or Correct Sentence" under 28 U.S.C. §2255,
filed March 11, 2002; on the "Government's Answer . . . And
Motion For Summary Judgment," filed May 1, 2002; and on the peti-
tioner's informal motion for information, filed September 24,
2003.   For the reasons stated herein, and for the further
reasons stated in the government's Motion for Summary Judgment,
the petitioner's motion for information will be <u>denied</u>; the
government's Motion will be <u>granted</u>; and the petitioner's Motion
to Vacate will be <u>denied</u> and <u>dismissed</u>.

## I.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

     Pertinent to this Motion, the record reflects that on
September 15, 1999, a federal Indictment was filed, charging the
petitioner with conspiracy to possess with intent to distribute
quantities of heroin, cocaine base, powder cocaine and marijuana,
all in violation of 21 U.S.C. §§841(a)(1) and 846 (Count One);

and charging him with possession with the intent to distribute cocaine base and powder cocaine, in violation of 21 U.S.C. §841(a)(1) (Count Two). After pleading "not guilty" to the subject charges, the petitioner exercised his right to a jury trial.

At trial, the government presented testimony and other evidence from law enforcement officers as well as from the petitioner's unindicted co-conspirators. Such evidence reflected that as a result of certain information which they had received on March 18, 1998, vice officers with the Charlotte-Mecklenburg Police Department initiated surveillance of a residence at 13215 Mallard Creek Road in Charlotte. Such address was the petitioner's residence.

On the date in question, the police approached two vehicles. The first vehicle, which was stopped after it left the petitioner's residence was driven by Kenneth Collier, the petitioner's roommate. During that stop, Collier was found in possession of a marijuana cigarette. As a result, Collier was ticketed for his conduct, and then allowed to leave.

The second vehicle was driven by convicted drug trafficker, Gaspard Fourreau, and was occupied by his female passenger. That vehicle was stopped in the driveway of the petitioner's residence. After Fourreau and his passenger were found in possession of some marijuana, a consensual search was conducted on the vehicle. That search yielded $11,900 in cash, which was found partially concealed under the driver's seat. Upon questioning,

Fourreau admitted that he had come to the petitioner's residence to purchase $12,000 worth of cocaine from him.

Thereafter, the officers went to the petitioner's residence and advised him that they were conducting an investigation. The petitioner gave the officers consent to search his residence. During their search the officers found about two kilograms of powder cocaine and nearly another full kilogram of cocaine base in a garbage can just outside of the petitioner's back door. The officers also found a small quantity of marijuana and drug para- phernalia, including wrappers commonly used to package heroin, in a bedroom which the petitioner identified as belonging to his roommate.

The government's evidence further showed that following the discovery of the foregoing items, the petitioner waived his rights and made a statement to the officers. At that time, the petitioner admitted that he recently had resumed his drug selling business in the Charlotte area; and that he also was using other people to sell his drugs. The petitioner also admitted that he and Fourreau had grown up together in Connecticut. Surprisingly, however, the petitioner denied both ownership and knowledge of the drugs which had been found in his garbage can.

Rather, the petitioner speculated that the drugs may have been left at his residence by Tony Johnson, an individual with whom he had grown up, and with whom he had discussed his plans to return to the drug business. In fact, the petitioner stated that

Johnson had "probably" brought five or six kilograms of cocaine powder down from New York during Johnson's most recent trip.

In addition to the foregoing, the government also presented testimony and other evidence which reflected that the petitioner had been found in possession of drugs on occasions preceding the March 1998 incident.  For instance, Fourreau testified to being present at another of the petitioner's residences in September 1994, when the police conducted a search.   At that time, police found an ounce of heroin and a 9 mm. handgun.  Also on that occasion, officers stopped a vehicle which was leaving the residence and found three additional packets of heroin and two rocks of crack, all in the possession of the driver.

Fourreau also testified that in June 1993, while he was living with the petitioner at yet another Charlotte residence, officers came to their house.  When the petitioner announced to Fourreau that the police were approaching, Fourreau ran out of the back door with two ounces of cocaine.  Although the police were unable to apprehend Fourreau on that occasion, they did find a firearm for which the petitioner claimed ownership.

Brothers Irecas and Larry Valentine, also unindicted co-conspirators of the petitioner, testified that they were in the drug dealing business with the petitioner in Charlotte and Hickory, North Carolina during the early 1990s.  More particularly, the brothers stated that they first met the petitioner in Charlotte; that on occasions, they had seen heroin and firearms

at the petitioner's home; and that they had regularly received $500 to $1,500 packages of crack cocaine on consignment from the petitioner during that period. The Valentine brothers further testified that subsequent to those occasions, they came to live with Fourreau in Hickory, N.C., where the three sold cocaine base and cocaine powder which was supplied to them by the petitioner and other drug dealers.

The government also presented testimony from Antonio Covington, who stated that he had met the petitioner in the mid-1990s. Covington testified about drug deals between himself, Fourreau, Juillen Middleton and the petitioner. Such testimony established, among other things, that the petitioner had supplied Covington with a total of about two kilograms of cocaine base in three to four-ounce weekly installments. Covington also indicated that he had learned how to convert cocaine powder to crack by having watched the petitioner during that period.

Juillen Middleton also testified about drug deals in which he and the petitioner had engaged in both Charlotte and Stamford, Connecticut, beginning in 1989. Middleton stated that in 1991, he moved from Stamford to Charlotte and took up residence with the petitioner. Middleton indicated that after he came to Charlotte, he, Fourreau and the petitioner became operators of drug houses in Charlotte, Hickory and Gastonia, North Carolina. Middleton also indicated, like Covington, that he had learned to convert powder to crack cocaine by observing the petitioner.

Middleton further testified that he and others had driven shipments of cocaine from New York to Charlotte for the petitioner; that he also had occasionally transported heroin to Charlotte for the petitioner; and that the petitioner had sometimes used women to transport drugs from New York to Charlotte.

In addition to the foregoing, two more law enforcement officers testified about an undercover crack deal which the petitioner completed in Stamford, Connecticut.  Such deal occurred in July 1999--about 16 months after the March 1998 incident.

The petitioner testified in his own defense.  According to the petitioner, he lived in Charlotte between the years of 1992 to 1995, and again beginning in 1997 up until the time of his trial.  The petitioner indicated that in about 1985, he was convicted of selling drugs in Stamford Connecticut.

The petitioner also indicated that he was user of marijuana and powder cocaine, and an occasional user of crack cocaine; and that he had several friends who used and/or sold those and other drugs.  However, the petitioner denied being a drug dealer, and he denied knowing several of the witnesses who had testified against him.  Further, the petitioner denied that the nearly three kilograms of cocaine which were found at his residence in March 1998 belonged to him.

On cross examination, however, the petitioner admitted that the Valentine brothers, whom he initially claimed that he did not know, had met his close friend Mr. Fourreau while all of the men

were present in the petitioner's home.  The petitioner also ad-
mitted that after his 1985 cocaine conviction, in 1994 he was
arrested when heroin was found in a vehicle he was driving and in
a drawer in his kitchen.  However, the petitioner denied that
those drugs belonged to him.  Finally, the petitioner stated that
the fact that he had been convicted of drug trafficking charges
in the past and had been found in possession of drugs on other
occasions, including the occasion giving rise to the charges he
then was facing, all were mere coincidences.

Not surprisingly, the jury did not believe the petitioner's
testimony inasmuch as it convicted him of the two charges which
he was facing.  Consequently, on November 7, 2000, the Court held
the petitioner's Sentencing Hearing.  There, the Court initially
concluded, in light of the then-recent ruling in Apprendi v. New
Jersey, 530 U.S. 466 (2000) that, due to his prior drug convic-
tion, the petitioner's maximum exposure was 30 years imprison-
ment.

The Court next received testimony from an agent with the
Hickory Police Department, who testified that he was familiar
with the testimony of the witnesses who talked about the peti-
tioner's drug trafficking activities and his firearms possession
in Charlotte and elsewhere since about 1991.  That witness fur-
ther testified to matters which established that the amount of
cocaine base for which the petitioner should be held accountable
was in excess of 1.5 kilograms; that the firearms in question

were carried in furtherance of this drug conspiracy; that the petitioner played a managerial role in the subject conspiracy; and that the petitioner had obstructed justice by consistently giving false testimony about the subject offenses. Consequently, the Court concluded that the petitioner was subject to role enhancements for those matters. In addition, the Court concluded that the petitioner should be held accountable for in excess of 1.5 kilograms of crack.

Ultimately, the Court sentenced the petitioner to two con-current terms of 360 months imprisonment. Thereafter, the petitioner gave a timely notice of appeal to the Fourth Circuit Court of Appeals. On appeal, the petitioner challenged the suf-ficiency of the evidence, this Court's admission of evidence of an alleged unrelated drug transaction, and he argued that this Court had erred by failing to ask if he affirmed or denied the information set forth in the §851(b) Notice. See United States v. Baptiste, No. 00-4870, slip op. at 2 (4th Cir. April 26, 2001).

Nevertheless, the Fourth Circuit affirmed both of the peti-tioner's convictions and sentences, specifically finding that the evidence was sufficient; that the Court had not abused its dis-cretion on the challenged evidentiary ruling; and that the Court's failure to make the subject inquiry did not render the sentencing proceedings infirm. Id. at 2-3.

Next, on March 11, 2002, the petitioner filed the instant

Motion to Vacate, setting forth two categories of claims. By his Motion, the petitioner first argues that his trial and appellate attorneys were ineffective in a number of ways. Second, the petitioner argues that his sentence exceeds the maximum term authorized by Congress, in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000).

In addition, on April 7, 2002, the petitioner filed a supplement to his Motion, setting forth what he regards as documentary proof that he did not sustain a driving-related conviction for which a criminal history point was assessed. However, because this Court will analyze that claim in the context of one of the petitioner's allegations against counsel, the Court will not set out a separate analysis for this particular claim.

On May 1, 2002, the "Government's Answer . . . And Motion For Summary Judgment" was filed. By that combined document, the government strenuously challenges each of the petitioner's contentions of ineffective assistance of counsel. Similarly, the government denies that the petitioner is entitled to any relief on his Apprendi claim.

On June 24, 2002, the petitioner filed a document captioned as "Defendant Baptiste's Traverse To The Government's May 1, 2002 Answer . . . ." The petitioner's Traverse seeks to clarify his position on certain of his arguments. In addition, however, the document reiterates some of the arguments which the petitioner

initially raised in his Motion to Vacate. In sum, the petitioner repeats his assertion that he is entitled to relief on his Motion to Vacate.

Last, on September 24, 2003, the petitioner filed a letter-motion, asking for information concerning a post-sentencing reduction which Gaspard Fourreau reportedly had received. The petitioner claimed that such information was needed so that he could determine whether there was "anything that may constitute newly discovered evidence warranting an amendment to [his] pending §2255 motion." Such motion also asks the Court to reconsider its earlier denial of the petitioner's request for appointed counsel.

Now, for its part, the Court has carefully considered all of the foregoing information, along with the record of this matter and the arguments made by the parties. For the reasons stated herein, and for the further reasons set forth in the government's documents in support of summary judgment, the Court concludes that the petitioner's informal requests for additional information and for counsel both should be <u>denied</u>; that the government's Motion for Summary Judgment should be <u>granted</u>; and that the petitioner's Motion to Vacate should be <u>denied</u> and <u>dismissed</u>.

## II. <u>ANALYSIS</u>

1. **<u>The petitioner's claim that his sentence exceeds the statutory maximum term authorized by Congress, all in violation of Apprendi must be summarily rejected</u>**.

Taking his claims out of turn, the Court first will address the petitioner's allegation that his 30-year sentence was imposed in violation of the then-recent ruling in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). Such claim, however, will not long detain the Court.

Indeed, it is now abundantly clear that the rule announced in <u>Apprendi</u>, and further established by its progeny--<u>Booker/ Fanfan</u> and <u>Blakely</u>[1]--is not applicable in collateral proceedings such as this one. <u>See United States v. Sanders</u>, 247 F.3d 139 (4th Cir.) (holding that <u>Apprendi</u> is not retroactively applicable to cases which are before the Court on collateral review), <u>cert. denied</u>, 534 U.S. 1032 (2001); <u>and United States v. Morris</u>, 429 F.3d 65, 72 (4th Cir. 2005) (holding that <u>Booker</u> also is not retroactively applicable on collateral review). <u>See also United States v. Fowler</u>, No. 05-6493, slip op. at 1 (W.Va. June 17, 2005) (holding that "neither <u>Booker</u> nor <u>Blakely</u> announce a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review.").

To put it simply, the petitioner is not entitled to raise his <u>Apprendi</u>-based claim in this proceeding. Consequently, that claim will be summarily dismissed.

**2. <u>Although the petitioner's allegations against counsel require closer scrutiny, those matters still do not entitle him to any relief</u>.**

---

[1]<u>See United Sttes v. Booker/Fanfan</u>, 543 U.S. 220 (2005); <u>and Blakely v. Washington</u>, 542 U.S. 296 (2004).

With respect to allegations of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984).  In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. <u>Id</u>. at 689; <u>see also</u> <u>Fields v. Attorney Gen. of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir.), <u>cert. denied</u>, 474 U.S. 865 (1985); <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065 (1984); <u>and</u> <u>Marzullo v. Maryland</u>, 561 F.2d 540 (4th Cir. 1977), <u>cert. denied</u>, 435 U.S. 1011 (1978).

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different.  <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998), <u>cert. denied</u>, 528 U.S. 855 (1999).  Rather, the Court "can only grant relief under . . . <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'" <u>Id</u>., <u>quoting</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993).  Under these circumstances, the petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at 1297, <u>citing</u> <u>Hutchins</u>, 724 F.2d at 1430-31.  If the peti-

tioner fails to meet this burden, a "reviewing court need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1290, <u>citing</u> <u>Strickland</u>, 466 U.S. at 697.

**A.** **Counsel was not ineffective for not seeking to suppress the drugs found during the March 1998 search**.

By this claim, the petitioner argues that trial counsel was ineffective for having failed to try to suppress the nearly three kilograms of cocaine which were found in his garbage can. To be clear, the petitioner does not deny that he gave officers consent to conduct a search. Nor does he argue that he excluded his trash cans from the scope of that search. Rather, the petitioner claims that the officers should have known that his consent did not include his garbage cans. Thus, he claims that there is a "'reasonable probability' that had counsel challenged the search, the result of the proceeding would have been different . . . ." Notwithstanding his strong beliefs to the contrary, however, this claim must be rejected.

To be sure, at the outset of its analysis, the Court first notes, as the government correctly observes, that "an analysis focusing on mere outcome determination . . . is defective." <u>Lockhart</u>, 506 U.S. at 369. Rather, this Court must determine not whether the outcome would have been different, but whether the result of the petitioner's trial was "fundamentally unfair or unreliable." <u>Id</u>. In the instant case, given the substantial

testimonial evidence which established that during the period in question, the petitioner was a substantial drug dealer, he cannot demonstrate that his guilty verdicts are fundamentally unfair or unreliable.

Moreover, on this record, the Court cannot conclude that counsel was deficient for failing to seek the suppression of the drugs.  That is, it is undisputed that law enforcement officers asked for permission to conduct a search at the petitioner's residence; that the petitioner gave his consent for that search; that the officers searched both the residence and a trash can which was located just outside the petitioner's back door; and that the petitioner did not state, either before, during or after the search, that the officers should limit their search to the interior of his residence.  Therefore, the petitioner has failed to demonstrate that the officers' search exceeded the scope of what a reasonable officer would have understood based upon their interchange with the petitioner.  See Florida v. Jimeno, 500 U.S. 248 (1991).

Rather, this case is analogous to United States v. Jones, 356 F.3d 529, 534-35 (4th Cir), cert. denied, 541 U.S. 952 (2004), where the Court found that it was objectively reasonable for law enforcement officers to believe that the defendant's consent to the search of his hotel room and a bag found therein extended to the search of a locked box which was found inside that bag.  Indeed, like in the instant case, the defendant in

<u>Jones</u> neither "qualified his consent in any way" nor "object[ed] to" the search which was conducted. <u>Id</u>. Accordingly, the petitioner simply cannot demonstrate either deficient performance, or actual prejudice in connection with this claim.

**B. <u>Counsel was not deficient for having chosen to limit his attack of certain witnesses' to his cross-examination of those persons</u>.**

As to this claim, the petitioner argues that counsel was ineffective for not seeking to strike the testimony of certain "critical witnesses" and/or for not seeking a limiting instruction concerning such witnesses' testimony. The basis for this claim is the petitioner's speculation that the three witnesses in question "may have tailored their testimony." Suffice it to say, however, mere speculation is an insufficient basis for granting <u>habeas</u> relief.

First of all, the record shows that the Court entered its standard sequestration order in this case, and the petitioner cannot demonstrate that such order actually was violated. On the contrary, Gaspard Fourreau, one of the three witnesses in question, testified that he had been instructed not to discuss his testimony with any other witnesses; and that although he had shared a holding cell with the other two witnesses he, in fact, had not discussed his testimony with them. Thus, the petitioner's speculative claim simply is not supported by the record.

Second, even in cases where the Court believes that a vio-

ation of a sequestration order has occurred, the Fourth Circuit
has recognized that cross-examination is the better "technique
. . . to ensure the pursuit of truth at trial." United States v.
Rhynes, 218 F.3d 310, 320 (4th Cir. 2000) (en banc)(reversing a
trial court's exclusion of a witness whose attorney had discussed
a prior witness' testimony with him).  Thus, inasmuch as defense
counsel cross-examined the witnesses in question concerning the
veracity of their testimony as well as their motives for testi-
fying--and in the absence of an actual showing of collusion--the
petitioner cannot demonstrate either deficient performance or
prejudice in connection with these assertions.

C.  **The petitioner has failed to show
    deficient performance or prejudice
    in connection with counsel's hand-
    ling of the jury's exposure to the
    extraneous information**.

Here, the petitioner alleges that counsel was ineffective
for having failed to request a voir dire of the entire jury after
learning that two jurors had viewed his "mug shot" picture and a
document concerning his failure to pay income taxes in Connec-
ticut.

With regard to the subject incident, the record shows that
at a point after the government's presentation of its case-in-
chief but before the petitioner's presentation, one juror
received an exhibit packet which contained the subject informa-
tion.  On voir dire, the juror testified that she saw the

information; that the juror sitting next to her also saw what she was reviewing; and that the other jurors may have heard her tell the juror next to her that she had viewed extraneous items, but she did not mention the petitioner when she spoke of those matters.

The other juror was questioned and explained that she had glanced at the materials in question, but had not carefully reviewed them.  That juror further explained that she thought the picture was of the petitioner; that she did not read the document; and that, in any case, she could disregard whatever she had seen and judge the petitioner on the basis of the properly admitted evidence.  On this record, then, the Court cannot conclude that defense counsel should have sought a <u>voir dire</u> of the entire jury.

Indeed, the evidence did not show that the entire jury came in contact with the extraneous information.  Rather, the evidence showed that only one juror had viewed both items, and another had viewed the picture but not the document.  Further, the other jurors had only heard of the existence of extraneous materials, but they were not told of the exact nature of such items.  Thus, it appears that just like his other speculative challenges, the petitioner has failed to point to a single matter which could support a finding that he somehow was prejudiced by counsel's handling of this matter.

Further, with regard to a jury's exposure to extraneous

materials, the law is clear that in the absence of "some strong indication that the evidence is so powerful that a jury could not ignore it and that the defendant would be harmed as a result," the Court cannot find reversible error. United States v. Jones, 907 F.2d 456, 460 (4th Cir. 1990). In the instant case, once the two jurors who came in contact with the extraneous materials were questioned, the Court brought the entire jury into the courtroom and directed the two jurors that they were to disregard the extraneous materials. The Court also reminded the entire jury of his earlier instructions concerning their obligation to disregard the matters which he directed them to disregard, and the Court reminded the jury of their obligation to follow all instructions.

The petitioner does not point to any impact which the materials allegedly had on the jury; nor does he even suggest that the Court's instructions were not followed. On this record, then, the Court finds that there is far less than a "reasonable probability" that the jury's verdict was influenced by the extraneous materials. Cf. United States v. Barnes, 747 F.2d 246, 250 -251 (4th Cir. 1984) (finding reversible error when entire jury viewed parts or all of several extraneous documents whose contents related directly to critical issues in the case). Accordingly, the petitioner cannot prevail on this claim.

> ### D.  **The petitioner cannot demonstrate any prejudice on the basis of counsel's preparation of him as a witness**.

As to this next claim, the petitioner alleges that counsel was ineffective for having made him testify pursuant to a "script" which counsel had prepared for him.  According to the petitioner, "counsel's script subjected [him] to that two level [obstruction of justice]" enhancement.  The Court's review of the record shows that the petitioner is mistaken on this claim.

To be sure, it was the petitioner's responses to the questions which he was asked (both on direct and cross-examination), not the fact that his testimony followed a particular format, that caused the Court to conclude that he was obstructing justice.  Moreover, inasmuch as the petitioner still claims that his testimony was true, and he does not allege that his former attorney instructed him to give false testimony, he cannot possibly demonstrate that counsel was deficient on the basis of his performance in this regard.

Furthermore, it has not escaped this Court's attention that even in the absence of the subject two-level enhancement, the petitioner's Offense Level would have been 40.  Coupling that Level with his Criminal History Category VI (or even with Category V, as the petitioner contends was applicable), he still would have been subject to a term of 360 months to life imprisonment.  Consequently, since the petitioner received a 360-month sentence, he cannot possibly demonstrate any prejudice here.

### E.   <u>The petitioner was not prejudiced by counsel's decision not to raise a more</u>

**vigorous challenge to the Court's inclusion of one of a particular Criminal History point**.

By this claim, the petitioner alleges that counsel was ineffective for having failed to mount a more vigorous challenge to the Court's assessment of a criminal history point for his prior conviction on a traffic-related charge. Again, however, the inclusion of the subject point had no real impact on the petitioner's final sentence. Rather, even if the petitioner's Criminal History Category was V (by virtue of his having 12 not 13 criminal history points), and his Offense Level was 40 (as he contends it should have been), such calculation still exposed him to a sentence of 360 months to life imprisonment. Once again, therefore, the petitioner was not prejudiced by counsel's performance in connection with this claim.

      F. **The petitioner cannot prevail on his claim regarding the lack of a buyer/ seller jury instruction**.

Here, the petitioner complains that his attorney was ineffective because he failed to request a buyer/seller jury instruction despite, in the petitioner's opinion, the existence of evidence which would have supported it. Presumably, the petitioner believes that the evidence that he was a drug user was ample support for such an instruction; therefore, counsel should have sought the instruction for him. However, the fact that the petitioner may have consumed some of the substances which he also

20

sold and distributed to others is of little consequence here.

That is, the government presented substantial evidence that the petitioner possessed large quantities of drugs; that he distributed those substances; and that he supervised others in their production and/or distribution of those substances.  For his part, the petitioner denied that he was a drug dealer during the period in question, but conceded that he was a drug user.  Clearly, then, other than his self-serving admission, there was no evidence to support the petitioner's contention that he had only a buyer/seller relationship with the witnesses who testified against him.

Accordingly, inasmuch as the law is well settled that a defendant is entitled to a jury instruction regarding his theory of defense only when there is a foundation in evidence to support such theory, the petitioner cannot demonstrate any prejudice on the basis of counsel's decision in this regard.  See generally United States v. Hicks, 748 F.2d 854 (4th Cir. 1984).

> ### G.  **The petitioner cannot prevail on any of his allegations against appellate counsel**.

The petitioner last challenges his appellate counsel on a number of grounds.  Indeed, the petitioner claims that appellate counsel was ineffective for failing to raise the buyer/seller issue.  However, as this Court already has explained, such an effort would have been unavailing in light of the absence of any

factual support for the subject instruction.

Additionally, the petitioner claims that appellate counsel was ineffective for having failed to secure transcripts of the jury selection process, opening statements, preliminary instructions, closing statements and jury instructions so that counsel could have "investigate[d] potential issues" for appeal. Ironically, however, the petitioner does not point to a single matter which he believes could have been discovered and raised had counsel obtained the materials to which he points. In fact, the petitioner admits that this claim is "entirely speculative" to the extent that he cannot point to any such potential claims. Therefore, it goes without saying that the petitioner is not entitled to any relief on this claim.

Finally, with regard to the petitioner's letter-motion asking for information concerning a post-sentencing reduction which witness Forreau reportedly received, and seeking reconsideration of his request for counsel, such motion must be denied. Indeed, the petitioner's assertion that he needs the subject information in order to decide whether there are any additional claims for him to raise is tantamount to a fishing expedition which this Court will not facilitate. Moreover, inasmuch as the petitioner has failed to set forth any basis to support his renewed request for counsel, that part of his motion also must be denied.

### III.  CONCLUSION

This Court has conducted a careful review of the record of this case, and determined that the petitioner is not entitled to relief on any of his claims.  Therefore, the government's Motion for Summary Judgment must be <u>granted</u>.

### IV.  ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.  That the petitioner's letter-motion for information and reconsideration of his request for counsel (doc. # 14) is **DENIED;**

2.  That the government's Motion for Summary Judgment (doc. # 7) is **GRANTED;** and

3.  That the petitioner's Motion to Vacate (doc. # 1) is **DENIED and DISMISSED.**

SO ORDERED.


Signed: March 16, 2006

Richard L. Voorhees
Chief United States District Judge